UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HUNG DUONG,

    Plaintiff,

    v.

ITT EDUCATIONAL SERVICES, INC., et al.,

    Defendants.
_____/

No. C 14-2653 PJH

**ORDER GRANTING MOTION TO TRANSFER VENUE**

Before the court is defendants' motion pursuant to 28 U.S.C. § 1404(a) to transfer venue to the Eastern District of California for the convenience of parties and witnesses. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion.

**BACKGROUND**

Plaintiff Hung Duong was employed as an instructor of Electronics by defendant ITT Educational Services, Inc. ("ITT") at its campus in Clovis, California, for approximately six and a half years. From 2010 to 2013 he served as the Chair of the Electronics Department. He alleges that he was fired in June 2013 based on false and defamatory accusations made against him as a pretext to cover up unlawful discriminatory and retaliatory animus. He was 55 years of age at the time of his termination, and is of Vietnamese ancestry.

In October 2012 plaintiff applied for the position of Dean of ITT's Clovis Campus, but was not interviewed. He claims that as part of the application process, he was required to

complete an online psychological/personality assessment, which other, younger, non-Asian applicants were not required to take.

On November 16, 2012, ITT hired Pha Mouavangsou, a 37- or 38-year old man from outside the company to fill the position of Dean.  Mr. Mouavangsou is of Hmong ancestry.  Plaintiff claims that Mr. Mouavangsou did not have the qualifications to serve as Dean, and also asserts that there are "intense cultural and political differences between the Hmongs and the Vietnamese."

Plaintiff alleges that defendant Allison Hopkins ("Hopkins" – sued under her former name, Allison Hawkins), who was the Director of ITT's Clovis campus, made the decision to hire Mr. Mouavangsou for the position of Dean.  On November 20, 2012, plaintiff emailed Hopkins to ask why he had not been interviewed, and she allegedly replied that he had not been recommended for the position based on the results of the online psychological/personality assessment.

Plaintiff claims that Mr. Mouavangsou harassed him and subjected him to different terms and conditions of employment, such as requiring him to perform various tasks on an impossibly short deadline, attempting to issue him a written warning for failing to work hours he was not scheduled to work, and usurping his authority as Chair of the Electronics Department by hiring an Adjunct Instructor without plaintiff's consent.

As a result of these and other incidents, plaintiff made a formal written complaint of harassment in May 2013 to ITT's HR Department.  Defendant Sam Russell ("Russell") was assigned to investigate plaintiff's complaint.  In the course of his investigation, Russell interviewed plaintiff, Hopkins, Mr. Mouavangsou, Dawn Lawrence, and other witnesses, at various times during the month of May 2013.

Plaintiff claims that thereafter, Mr. Mouavangsou began retaliating against him.  Plaintiff claims he had a pre-planned vacation set for June 10, 2013, to June 14, 2013, and that Mr. Mouavangsou approved the vacation on June 7, 2013, but at the same time emailed plaintiff a long list of tasks he needed to complete before he went on vacation.  Plaintiff claims that no reasonable person could have completed all the tasks in such a

short time period, and that because he was afraid of being fired if he did not complete all the tasks, he was forced to cancel his vacation.

Plaintiff alleges that he was fired from ITT on June 12, 2013, and that no reason was provided at the time of his termination. He claims that he later learned that at some point in June 2013, Russell and Hopkins had falsely reported to ITT's HR Department that plaintiff had cancelled three classes without approval, and that plaintiff had asked an Adjunct Instructor (Hector Gonzalez) to sign blank, pre-dated attendance forms, which ITT considered a falsification of attendance records. Plaintiff asserts that he later learned that he had been terminated based on those false allegations.

Plaintiff claims that for one of the classes he was accused of rescheduling, the cancellation/rescheduling had in fact been done by Mr. Mouavangsou, and that for the remaining two classes, plaintiff had received approval to cancel/reschedule them. He also denies that he ever asked anyone to sign blank pre-dated attendance forms or to manipulate or falsify attendance records. He asserts that Mr. Gonzalez (who is a 49-year-old Hispanic man) was never disciplined for signing blank pre-dated attendance forms or for falsifying attendance records. He also claims that cancelling/rescheduling classes is common at ITT, and that it was routinely done by younger, non-Asian department chairs, who were never disciplined for it.

Plaintiff filed a charge of discrimination with the California Department of Fair Employment and Housing (DFEH) and the Equal Employment Opportunity Commission on November 12, 2013, alleging discrimination based on race, national origin, and age, and also alleging retaliation. He received a right-to-sue letter from DFEH on November 14, 2013.

Plaintiff filed the present action in the Superior Court of California, County of Alameda, on May 8, 2014, alleging five causes of action – four claims under the Fair Employment and Housing Act (FEHA) for retaliation, discrimination based on national origin, discrimination based on age, and discrimination based on race, plus a claim of defamation. The four FEHA claims are asserted against ITT only, and the defamation

3

claim is asserted against ITT, Russell, and Hopkins.

On June 9, 2014, defendants removed the case, alleging diversity jurisdiction. They assert that there is more than $75,000 at issue in the case, based on plaintiff's claims for lost wages, punitive damages, and attorney's fees and costs. Defendants also allege that the parties are completely diverse, because plaintiff is a citizen of California, and ITT is incorporated in Delaware and has its principal place of business in Indiana.

Defendants assert that Russell and Hopkins, while both citizens of California, are sham defendants who were fraudulently joined to defeat diversity. They contend that the sole claim asserted against Russell and Hopkins is defamation, but that plaintiff cannot state a claim of defamation in connection with information "published" in his personnel file because the publication of the allegedly false information is protected by the "common interest" privilege codified in California Civil Code § 47(c), and is not actionable because plaintiff has failed to plead facts showing malice (required to defeat the privilege).

Venue is proper in this district, under the removal statute, 28 U.S.C. § 1441. See Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 666 (1953) (proper venue of removed action is district court of the United States for district and division embracing place where such action is pending).

Defendants now seek an order pursuant to 28 U.S.C. § 1404(a) transferring venue to the Eastern District of California, where ITT's Clovis campus is located, where plaintiff resides, and where the witnesses and documents are located. That motion is noticed for hearing on August 6, 2014. Plaintiff has also filed a motion seeking an order remanding the case to the Alameda County Superior Court, arguing that there is no complete diversity because he is a citizen of California, as are the two individual defendants. That motion is noticed for hearing on August 13, 2014.

**DISCUSSION**

A.  Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been

4

brought." 28 U.S.C. § 1404(a). The transfer of venue statute invites a "two-part analysis." Park v. Dole Fresh Vegetables, Inc., 964 F.Supp. 2d 1088, 1093 (N.D. Cal. 2013). First, a district court considers the "threshold question" of whether jurisdiction exists and venue is proper in the transferee forum. Id.; see also Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960). If such a showing is made, the court then evaluates whether transfer of venue serves the convenience of the parties and the interest of justice "according to an individualized, case-by-case consideration." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 23 (1988).

      The burden is on the moving party to demonstrate that transfer of venue is appropriate. The party moving to transfer venue under § 1404(a) bears the burden of establishing that transfer is appropriate. Jones v. GNC Franchising, Inc., 211 F.3d 495, 499 (9th Cir. 2000). Courts evaluate the following factors to determine which venue is more convenient: (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of the witnesses, (4) the ease of access to the evidence, (5) the familiarity of each forum with the applicable law, (6) the feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. See Williams v. Bowman, 157 F.Supp. 2d 1103, 1106 (N.D. Cal. 2001).[1] However, "no single factor is dispositive," and district courts are afforded "broad discretion to adjudicate motions to transfer" after weighing any conflicting considerations. Stewart Org., 487 U.S. at 29.

B.    Defendants' Motion

      Defendants argue that this case should be transferred to the Eastern District of California for the convenience of parties and witnesses. They assert that the case could

---

[1] In Jones, the Ninth Circuit provided a similar list of potentially relevant factors: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." Id., 211 F.3d at 498–99.

5

1  have been brought in the Eastern District, because it meets the requirements for personal
2  jurisdiction and venue, and that the convenience and fairness factors favor transfer.
3       With regard to the plaintiff's choice of forum, defendants argue that this factor is not
4  entitled to weight because plaintiff resides in Fresno County and the events that gave rise
5  to the present action occurred there.  Thus, they argue, plaintiff cannot claim that it would
6  be more convenient for him to have the case heard in the Northern District.
7       With regard to the convenience of witnesses, defendants assert that plaintiff's
8  witnesses will unquestionably be former co-workers or people associated with the Clovis
9  campus, and that ITT's witnesses, including Hopkins and other employees, will all be from
10 the area surrounding the Clovis campus.  They contend that it would greatly inconvenience
11 their witnesses, including Hopkins, to have to travel several hundred miles to attend trial
12 and other case-related events.
13      With regard to access to evidence, defendants contend that all personnel documents
14 and records, and other information related to personnel matters at the Clovis campus, are
15 maintained in Clovis.  Because none of this evidence is located in the Northern District,
16 defendants argue that the "ease of access" factor favors transfer.  With regard to the
17 remaining factors, defendants contend that the Northern District has no interest in this
18 case, as none of the alleged incidents took place here, none of the witnesses reside here,
19 and none of the evidence is located here.
20      In opposition, plaintiff argues that the court should not even consider the motion,
21 because the case was improperly removed and the court therefore lacks subject matter
22 jurisdiction.  Thus, he asserts, since there is no federal court jurisdiction, the motion to
23 transfer should be denied (and the case should be remanded).
24      Plaintiff also contends that venue in the Eastern District would be no more
25 convenient that venue in the Northern District, because cases in the Eastern District are
26 currently being adjudicated in the Sacramento Division, in preference to the Fresno
27 Division.  He argues that the Northern District was not a forum chosen by him, and that the
28 filing in the Alameda County Superior Court was entirely appropriate under the venue rules

established by the State of California. He cites to FEHA, which authorizes employees to file suit in any county where relevant records are stored. See Cal. Govt Code § 12965(b). Plaintiff contends that Russell worked at ITT's Northwest Regional Office in Oakland, and that it was from there that he "published" the defamatory statements about plaintiff, to an ITT HR Manager. Plaintiff also asserts that Russell resides in Alameda County, and notes that while Russell claims he lives in Palm Springs and maintains a residence there, he does not state that he has no other residence and does not deny the allegation in the complaint that he is employed "in Alameda County." In addition, plaintiff contends, Russell was served with the summons and complaint at his office in Oakland.

Plaintiff asserts that documents and other evidence relevant to this case are stored in Alameda County. For example, he argues, Russell's email and work computer "are believed to be stored at ITT's Northwest Regional Offices" in Oakland. Plaintiff suggests that the fact that he himself does not reside and did not work in this district (or even in Alameda County) is irrelevant, although he does not explain why. He also contends that defendants have not met their burden of showing that the convenience and justice factors weigh heavily in favor of transfer to the Eastern District.

Plaintiff argues that the Eastern District is the most backlogged and over-worked federal court in the entire U.S., and that there is currently a shortage of judges in the Fresno Division. As a result, plaintiff contends, the Eastern District is currently randomly assigning civil cases in the Fresno Division to Sacramento for dispositive motions and trial. Plaintiff claims that the only inconvenience claimed by Hopkins is her busy schedule and the fact that Oakland is approximately 180 miles from her home in Fresno. However, plaintiff argues, a busy schedule does not provide a basis for changing venue, and Sacramento is just as far from Fresno as Oakland is. Plaintiff also asserts that Russell has failed to establish any inconvenience, and does not specifically deny the allegation that he works in Oakland.

Plaintiff does not address the issue of the convenience of witnesses, does not respond to defendants' argument that the relevant employment and personnel records are

maintained at ITT's Clovis campus, and does not specifically address the factors of ease of access to evidence relevant to the dispute or local interest in the controversy (particularly defendants' claim that the Northern District has no interest in this controversy).

      The court finds that the motion must be GRANTED.  As an initial matter, the court need not resolve the motion to remand before transferring this case.  While it is true that issues affecting the court's subject matter jurisdiction are ordinarily decided before determining questions of personal jurisdiction or venue, see Leroy v. Great Western United Corp., 443 U.S. 173, 180 (1979), the court is not required to determine subject matter jurisdiction before ordering a case transferred for the convenience of parties and witnesses, because such a transfer is not a ruling on the merits.  See Sinochem Int'l Co. Ltd. v. Malaysia Intern. Shipping Corp., 549 U.S. 422, 431-32 (2007) (internal citations and quotations omitted); see also In re LimitNone, LLC, 551 F.3d 572, 576 (7th Cir. 2008).

      Of the relevant § 1404(a) factors, two – the familiarity of each forum with the applicable law, and the feasibility of consolidation with other claims – are not applicable here.  The remaining factors – the plaintiff's choice of forum, the convenience of the parties, the convenience of the witnesses, the ease of access to the evidence, any local interest in the controversy, and the relative court congestion and time of trial in each forum – on balance favor transfer.

      Plaintiff is technically correct that the Northern District is not his choice of forum, as he filed the case in Alameda County Superior Court, which may or may not be an appropriate forum under California law.  Thus, this factor neither favors nor disfavors transfer.

      With regard to the convenience of the parties, plaintiff and one of the individual defendants (Hopkins) are residents of Fresno County, which is located in the Eastern District.  Russell lives in Palm Springs (Central District), which is closer to Fresno than it is to Oakland (Northern District), and approximately the same distance from Sacramento as from Oakland.  The ITT campus at issue is located in Clovis, which is in the Eastern

1  District. Thus, this factor favors transfer.[2]

2  Both the factors of convenience of witnesses and the factor of ease of access to
3  evidence favor transfer. Defendants assert that their witnesses are located at or around
4  the Clovis campus, and that other relevant evidence is located there. They also speculate
5  that plaintiff's witnesses are located there, although plaintiff does not respond to this
6  argument. Defendants submit a declaration from Russell, in which he states that he
7  investigated plaintiff's complaint of harassment and discrimination in May 2013 by
8  interviewing witnesses, including plaintiff, Hopkins, Mouavangsou, and other employees at
9  the Clovis campus, and also reviewed documents maintained at the Clovis campus.

10  Plaintiff's only argument regarding evidence is that there are emails and other
11  documents which he believes are stored on a computer in Oakland. Defendants attach a
12  declaration from Hopkins, in which she states that all the personnel records and
13  employment files pertaining to former and current employees at the Clovis campus are
14  maintained there. She asserts that based on the information available to her as College
15  Director, most if not all of the witnesses to the conduct alleged in the complaint reside in
16  Fresno County, and that most if not all of the evidence related to plaintiff's claims is located
17  at or near the Clovis campus.

18  The factor of local interest in the controversy also favors transfer. The complaint
19  makes clear that the events underlying the case occurred in Fresno County. In his
20  opposition, plaintiff asserts that he served Russell with the summons and complaint in
21  Oakland, and that Russell "published" the allegedly defamatory statements using a
22  computer in Oakland. However, this is the sole contact to any location outside the Eastern
23  District. Taken in conjunction with the fact that the witnesses and evidence, plus a majority
24  of the parties, are located in Fresno County, the Eastern District has a strong local interest
25  in the case, while the Northern District has little to none.

26  Finally, while the court acknowledges that the judges in the Eastern District have

---

28  [2] The court agrees with defendants that plaintiff's assertion that the case is likely to be assigned to the Sacramento Division is based on pure speculation.

9

higher caseloads that the judges in the Northern District, defendants have also provided evidence that the time from filing to disposition of cases is not significantly longer in the Eastern District. Accordingly, while this factor may slightly favor transfer, it does not outweigh the factors that do favor transfer.

## CONCLUSION

In accordance with the foregoing, the court GRANTS the motion to transfer this action to the Eastern District of California. The August 6, 2014 hearing date is VACATED. The court does not decide the pending motion to remand, which is noticed for hearing on August 13, 2014, which date is also VACATED.

**IT IS SO ORDERED.**

Dated: July 31, 2014

PHYLLIS J. HAMILTON
United States District Judge